Case number 24-5119. Seth Hettena, Appellant v. Central Intelligence Agency. Mr. Matsch for the Appellant, Mrs. Sautter for the Appellant. Mr. Matsch, you may proceed when you're ready. Good morning, Your Honors. Stephen Matsch for Appellant Seth Hettena, who is with me here today. I'd like to reserve two minutes for rebuttal. The main issue in this case is whether the CIA should have segregated and produced its Inspector General's findings and conclusions on whether agency officials obstructed his investigation into the death of Manodel Al-Jamadi. For the CIA to prevail, one of three propositions must be true. First, the report could simply lack any such passages. Second, they could all be exempt. Or third, they could lack information content. Because each of these propositions is false, the District Court approved redactions that violated the applicable exemptions under FOIA, and this course should reverse. So first, the report almost certainly has high-level findings and conclusions, at least, about obstruction. The District Court implicitly concluded that it did by invoking the concept of segregability. Further, the whole point of the report was for the Inspector General to issue findings and conclusions on the criminal statutes and policies at issue, three of those statutes related to obstruction. At least the conclusion section of the report, furthermore, would be one that one would expect to contain those references, and it's completely redacted. So the second point. You said three sections that you would assume would have findings? Oh, I'm referring to, sorry, I think I said the conclusions section of the report. One would expect to have conclusions about whether, you know, the relevant statutes were violated. Conclusions about obstruction are not inherently exempt. We argued that point in our opening brief, and the CIA appears to concede at page 21 of its brief that conclusions about whether a CIA official did or did not obstruct an investigation do not fall within Exemption 1 and the National Security Act. Of course, patches referring to conclusions might also refer to exempt information. So, for example, if there is a conclusion about evidence destruction, the evidence might be referenced in the passage, and the evidence might, of course, be an unacknowledged intelligence source method or activity that the CIA could withhold, but the conclusion itself would not be exempt. I don't think there's really any dispute about that. So that leads to the third possibility on which the CIA could prevail, that the non-exempt passages in the report lack information content, but it would obviously convey information to know whether CIA officials did or did not obstruct an inspector general's investigation, and that would remain true even if some of the details of the obstruction are omitted. So, for example, what statements were made about intelligence activities or what unacknowledged evidence might have been destroyed. So I focused so far on the on the conclusions generally, but I want to make a little reference to the to the hood that we pointed out in our brief. This is the hood that contributed to al-Jamani's death as found by the armed forces medical examiner. That hood, we, you know, we've explained in our brief why we we suspect that it's in the report. The court has the full version of the report, so it can confirm that for itself. The CIA hasn't said either in the district court or here directly whether it believes that references to the hood can be withheld as exempt. But because the CIA acknowledged its use of the hood in the report itself, that satisfies the official acknowledgement doctrine. So it can't continue to withhold the fact that it used the hood during the interrogation. It's already acknowledged that fact in this document itself. So can I I think I'm just going to try to summarize what I think you've just said. Absolutely. I'm not entirely sure this will be a question for the other side, whether the government disagrees with that. But as I understand it, the line you're drawing is sort of that the hypothetical in the briefs is this investigation found that CIA officials destroyed, redacted. So you would say that conclusion has to be disclosed, but any sort of reference to evidence or even an act, you're not disputing that that is properly exempt. That's correct with the caveat that if it's this hood or potentially other things. Exactly. So this is kind of how in my head I've understood your position, except unless that type of evidence has been officially acknowledged, that you think the full sentence should come out. That's our position. Absolutely. Yes. And I would just point out that that so so I've gone I went through that three step process for the conclusions. Generally, let me just finish it up with the hood. It would convey information content sort of a fortiori to know whether the hood was was destroyed or not. Assuming that that's something that the inspector general investigated. One would expect that he issued a conclusion about it because it appears in the report as part of the description of the underlying events. And it's kind of how Al-Jamadi died. I have one last point I'd like to make about deference in context of this case. So the CIA argued in its brief that the deference is warranted here because the case involves national security. I think that argument really conflates the issue of exemption with the issue of segregability. Whether disclosing particular information would harm national security really goes to exemption one because harm to national security is a is an aspect of of exemption one under executive order 13526. But I don't I mean, the CIA can maybe clarify this point, but I don't think there's really dispute for the reason that you sort of suggested, Judge Garcia, about the scope of the exemptions. We concede that except for the hood or potentially other activities that were discussed in this report, that, you know, exemption one in the National Security Act apply to to that. I think that I'm sorry to to to the activities that that, you know, might be in this report that are referenced along with conclusions about what happened and related findings. Would you like me to clarify that point? Please. Okay, so I mean, we I mean, I think I'm just sort of repeating something that Judge Garcia asked me and I answered yes to, which is we concede that if there is an activity that took place, you know, during in the underlying events, and it hasn't been officially acknowledged, probably that thing is going to qualify as an intelligence activity or an intelligence method, and so would be subject to exemption under the National Security Act and probably also exemption one. That was the part that was missing. I'm sorry, but it's an intelligence method or source or something like that. Yeah. And I take it that I mean, they we we presented two issues in our opening brief, and they only really contested one of them, which is segregability. They acknowledge at page 21 of their brief that these conclusions are not exempt. I don't think there's really much dispute, therefore, about the scope of the applicable exemptions. I think the dispute is really this third issue, which is do these conclusions convey information content? That's not a question that would warrant any deference to the CIA. This court is perfectly capable of determining on its own whether a shorn of these intelligence sources and methods would convey information, and that's really, I think, the dispositive issue in this case. There's just no reason to defer on it. But how do we look at, you know, we've all seen many redacted documents. What's the standard for assessing when what's left over after redaction is incomprehensible, misleading, materially incomplete? What is the standard for when giving in yet another form information that either has been declassified or already released by the agency is nonetheless not reasonably segregable because the new form of it is only going to raise unfounded confusion, speculation, what have you, or just be not accurately comprehensible? So I think that there's a couple of different elements to this. So this court in Leopold addressed the question of, I mean, which was a foreseeable harm segregability case, but it's a segregability case nonetheless. And the government in that case argued that a redacted version of the monitor's report in that case would potentially mislead the public, and this court rejected that as a rationale for non-segregability. I think the standard is, does it convey information content? That's the phrase that this court used in its seminal segregability decision in Meade. That's the phrase that it used in its more recent case in perioperative services. And I think it's a pretty low bar. I mean, perioperative services says it doesn't have to be helpful to be segregable. Stolt-Nielsen, I believe, said something similar. So the standard is not, is it helpful? Is it interesting? The question is, does it convey information? In your view, Leopold even rules out a limit based on being misleading. Because, so here's the, it's going to be a far-fetched hypo, but the hypothetical sentence everyone has agreed on so far is, this investigation found the CIA officials destroyed redacted. If it was a sandwich, you can see how that is incredibly, potentially misleading to a reader. What's the, why shouldn't we be troubled by that? So I do believe Leopold rules that out. And the sort of, if the public has a document that is known to be, I mean, if the public has a document that is redacted, I think there's many conclusions that could be drawn from that. And the fact that the public knows that it has incomplete information should give any reasonable person some degree of uncertainty as to whether, you know, the document says more than it does. People draw unfounded conclusions about incomplete information all the time. I don't think the answer is the agency can just withhold everything. Of course, the agency in many cases can correct misimpressions if it wants to. They don't have to disclose an intelligence method in order to put out a document that says, no, it wasn't a sandwich that this report refers to. And the, you know, the presumption of regularity would suggest that they get the benefit of the doubt on that. They can correct the record in those sorts of circumstances. What's your understanding of, of the role of all this conduct being overseas, because they're broad references to the national security exemptions applying to foreign activities. And they're broad references similarly to applying to classified material, all of which describes 100% of the redacted material here. Classified and foreign. It might describe 100% of the material. Well, classified, I mean, they say that it's properly classified. They say that it's foreign. I mean, what, what, you know, comments were made to the inspector general, I don't know if that was foreign or not. That could have been in the United States. What statements were made during the investigation? I mean, I think, again, I think the district court implicitly at least found that at least some of this information that was redacted is not, you know, does not fall within the plain meaning of the exemptions because it invokes the concept of segregability. And the concept of segregability by definition applies only when there is some exempt information in the records that is not exempt. The CIA, you know, claims that the report contains all this information, foreign liaison relationships, intelligence activities, and so on. It never says that the redacted passages consist solely of that information. And it doesn't say anything in its declaration about conclusions about obstruction, which we, you know, have every reason to believe exist in the report. I think that's just shows that the CIA failed to consider an important aspect of the problem in this case. That again, I mean, going back to Leopold, that was sort of the issue there too. And that it was, I mean, obviously it was a different issue. The issue in that case was that the agency failed to consider the harm conclusions reached by a different judge on a similar, on a similar question. Here, I mean, I think there's every reason to believe that there are these passages in the report. The court can confirm that for itself and it reads it. The CIA just didn't address it. And, you know, in the district court, it had every opportunity to do that. It did not submit a supplemental declaration, but asked for an extension for the sole purpose of providing one after we had raised this issue on our opening brief. Let me just to sort of allow us to focus on what you're seeking. As I read your briefing, you really narrowed your request to findings regarding the OIG finding regarding obstruction. Correct. If you could get the findings on that, that's what you're looking for. Yeah. I mean, if the court reads the report and thinks that other stuff should have come out, we're of course not going to object to that. We focus on obstruction because we think that the investigation into the homicide is more likely to implicate things that are actual intelligence activities because the homicide occurred during an interrogation. But yes, the obstruction is what we're really after here. The conclusions and findings on obstruction. Let me just ask you to clarify your response to a question Judge Hillard asked. You said, or maybe it was Judge Garcia said, what if the full sentence is they destroyed a sandwich? And your response was, well, the agency could clarify that. So take a hypothetical situation where the sentence, the complete sentence is they destroyed all the relevant evidence in the case. How did the agency explain that? I'm not sure I understand what you think the agency can do without going through what its position is come within either exemption one or three, and I'm ignoring the other exemptions that the agency invoked. So if, I mean, I think where this would come up is if there's some sort of unfounded public speculation about what the agency officials destroyed. And I think what I'm suggesting is that if that speculation is incorrect and unfounded, the CIA can provide a sort of public explanation that this is not what happened. No, but I'm saying in this context where you know what the report is looking at and you already know some information about the events involved. I mean, what does the agency say? You're not suggesting, I didn't understand your question to suggest that the agency could lie and say, no, wasn't a, you know, anything relevant to this case? Yeah, no, I'm not, I'm not suggesting that the agency could lie. I mean, if, if, if the, if, if the, if what the sentence said was, well, I mean, I think in that particular example, the, the eating of a sandwich is probably not an intelligence source or a method. So that's that they could actually probably disclose. But what I'm saying is they would say, that's not what the sentence says. They could say that. Yeah. I mean, if, if they want to clarify, FOIA doesn't require them to clarify anything. No, no. But that was your explanation in response to the judge's question. So I thought, well, what, what are you thinking? I mean, the agency can just deny the public speculation as to what might've been destroyed. It doesn't have to. It's only in my, my hypothetical was where it was, where a redaction itself is misleading. Right. Or at least it's, it's a very unusual thing. If, if, if a full sentence is disclosed, then we'll, I think I would agree with judge Rogers. We're not going to be, you're going to take that at face value, whatever the court says. But can I just ask a clarifying question on top of judge Rogers is, which is if there were a that said the agents destroyed all relevant evidence, I take it your position would actually be that should be disclosed. That's not, there's not plausibly any particular method or source. It's just saying, correct. Yeah. That's correct. I was surprised by his answer. Your question. Well, maybe, maybe, maybe I was, was, was confusing. Maybe, maybe I, maybe I misunderstood it. Yeah. I mean, our, our, our position would be that unless the redacted thing is actually an exempt intelligence source or method, they of course have to disclose that. Unless the panel has any other questions, I would urge the court to reverse and remand for the district court to consider the remaining exemptions. Thank you. Good morning, your honor, please. The court Kevin Soter from the department of justice for the government. I think it might be helpful to briefly take a step back and contextualize where we are. I think is one of the questions noted. The dispute has narrowed in some significant respects on appeal. And what's that issue now is whether the district court correctly recognized that the report that was released to the plaintiff contained evidence that the plaintiff had all of the information that can be released to him consistent with the CIA's obligations to apply exemptions one and three via the national security act. The district court concluded based on its in-camera review that CIA did properly determine that additional disclosures would reveal intelligence sources and methods. And that conclusion is sound and can be affirmed on multiple bases. Can I just ask one question, which might be the only question. Okay. So I understood you to agree in your brief that a sentence of the form, this investigation found that CIA officials destroyed redacted should be disclosed and your responses instead, such sentences don't exist. So the question for us, if we look at the document in camera is do sentences like that exist and we should conduct that de novo. I appreciate the opportunity to clarify, because I think what's going on here is we were sort of trying to make clear that there's no categorical rule about what you do with a sentence like that, because what we're saying is there's no categorical rule that a sentence like that will always necessarily contain information that goes to intelligence sources or methods, but it's also possible that it does. And so in the context here, I think that you can either recognize there could be situations where you would find sentences where releasing that sentence in that form in the context of the particular investigation that's at issue would reveal sources or methods, or it might be the case that it's inextricably intertwined with. There's an overlap there, of course, but I just want to make clear I think what we were responding to was recognizing there's no exemption for inspector general findings of obstruction. We're not saying that those are themselves the source or method, but any particular disclosure of an inspector general conclusion on obstruction may well reference a source or method, even with the redaction. Right. So if on its face there is a sentence that says this investigation found that CIA officials destroyed, and then the rest of the sentence is capable of being redacted, are you disputing that in the context of this case that should be disclosed? So because it's a context suspended inquiry, I think there's only so much I can say in open session. I'm, of course, happy to address your honor's questions in a closed session. I think what's important to keep in mind here is, as this court recognized, for example, in the Connell decision, protecting intelligence sources and methods information under the National Security Act, it's a quote, allows the CIA to withhold even quote superficially innocuous information on the ground that it might enable an observer to discover an intelligence source or method because bits and pieces of data may aid in piecing together bits of other information, even when the individual piece is not of obvious importance itself. I'm very sensitive to that proposition and wrote that opinion, but the what I and I'm also very sensitive to the fact this is an open session. What I do think we need to be able to accomplish is understand whether you are disputing what seemed to be an agreement between the parties to give Mr. Hedna's lawyer a chance to respond. So I'm I actually think if an entire page could remain redacted, but one sentence is this investigation found that CIA officials destroyed and then it's redacted again. I don't understand you to have ever disputed that that could be disclosed absent. Maybe there's some exceptional circumstance. I'm not sure what that would be. I think the point I'm trying to make clear is because this is a context dependent inquiry, I think we can answer the hypothetical if there were something standalone that you could totally divorce from the context of a particular case that said this is the inspector general's conclusion, then that's not something we're saying is itself an intelligence source method. But addressing whether in any given context that information could lead someone to be able to figure out the underlying intelligence source or method, how the CIA handles evidence after an event like this, things of that nature that go to the core of what's protected under these statutes. I think that's that's something that could raise an issue. I would like to. Just before you actually go ahead and move on, I don't want you to forget what it is. So just on the question about what falls under exemptions one or three. I take it you are disputing that the inspector general's high level conclusions about whether CIA personnel obstructed the investigation fall outside of exemptions one and three, the high level conclusions about whether that took place. I thought that there wasn't an argument that those themselves were intelligence sources or methods or revealed information about relations with foreign powers that this this is a. It's it's a domestic investigation. But I take you now to be saying, no, no, that's really contextual. I think it is something that's done in context and hear what you have before you is a report that makes clear there were two instances in which CIA determined based on its line by line review that exemptions one and three via the National Security Act did not apply. Those are the redactions that were made solely pursuant to exemption three in the CIA Act on pages I, the table of contents and twenty six of the report, which are at three thirty four and three sixty five. And so those are, I think we understood plaintiff to be saying I want the sort of there must be some high enough level of generality that couldn't compromise intelligence sources or methods. Those are the points where the report on its face makes clear that CIA reached the same conclusion as to those two specific passages, but not as depressed. I'm sorry, you're referring to the report. Page. Page. The table of contents, it's that page in the in the public record, it's three thirty four. Yeah. And then there's a similar redaction, but you can see that one under findings. You see that the entire table of contents has been produced to the plaintiff, with the exception of an area under findings that's marked only with B3 CIA Act. And so there, I think that makes clear that there are places where the agency in conducting this review determined there is some category of information in this report that is not itself that is not itself subject to exemption one and to the National Security Act. But it's those two discrete passages. And that's the issue that, as we noted, plaintiff didn't challenge that on appeal. He didn't raise the argument that, well, I was looking for these sort of high level conclusions. The district court overlooked that there are these two areas where one might expect to find high level conclusions. His point on that to be essentially the district court didn't reach the CIA. Maybe your argument that he's forfeited as to these two, these two specific redactions, maybe that makes sense. But if you were making a broader claim that he's forfeited all challenges to the CIA, I'm not sure I'd be. We're not. So I welcome the chance to clarify that we are saying he has forfeited on appeal the ability to challenge these two portions, these two applications of the CIA Act. And because he has not pointed to any other reversible error in the judgment of the district court, the correct remedy would be to affirm. So wait, the one is in the table of contents that you mentioned another one. No, it was just that where you said it was paid. It's table of contents, which is day three, 34, has taken place at 26. And you mentioned 365. Yes. And so I think that I think the concern that this that this raises is that plaintiff is trying to kind of ask for some broad pronouncements about what counts as exempt under under exemption one under the National Security Act, by saying that the by trying to raise this argument that these sort of high level statements were being obstructed, obscured, but that's actually not what's going on here. I think what these underscores that the CIA went through very carefully as the district court recognized when it also went through very carefully, and determined that the vast majority of this report is discussing details of the intelligence sources and methods that were used underlying this investigation. And there are portions that the CIA was able to produce, but those are the ones that are before you and were produced in district court. I just had one question about the CIA Act, as to the all the other redactions that are both National Security Act and CIA Act. Is it your position knows has litigated yet, that the CIA Act might protect some things that the National Security Act does not. So in this report be In this report, I think it's broader in that there are those two passages that are marked as CIA Act only. I think the agency determined that both independently support the redactions and the balance of the report. And so that's why it wasn't necessary to reach that. But if this case were to go through further litigation, I think that would be an issue that could be raised if that exemption were litigated. But of course, we're not litigating the merits of that exemption here. I did want to make sure to address one point that came up in plaintiff's opening argument, which was about how the official acknowledgement doctrine applies to his arguments about this hood that was referenced in other official acknowledgements. I think this court's cases make clear time and again that the official acknowledgement doctrine is quite strict, and it requires an exact match between the type of information that has previously been disclosed and what the plaintiff is seeking. And here, the fact that there are disclosures that mention a hood does not in any way constitute an official acknowledgement of the sort plaintiff is asking for, which is to say, ask you to go through the report and say not only do you find something saying withheld evidence redacted but withheld any evidence related to the hood. That's on page 21. It should be read as you have described it today. Okay. Because it was raised in connection with your argument regarding exemption one, wasn't it? It was the last part of that discussion. And then you go to exemption three. Yes, Your Honor. And so... Have I misunderstood what you were saying there? I apologize if I misspoke. I think I've been talking about exemption one and the part of exemption three that applies to the National Security Act are, in this case, the district recognized. So as to that issue, what we're saying is that this situation where, as we put it in the brief, the argument is not that a hypothetical standalone finding by the inspector general regarding destruction of evidence would necessarily contain classified information regarding intelligence activities or methods. And so I think what we were trying to make clear, and I've appreciated the opportunity to clarify further today, is there is no categorical answer in either direction. I think the district court's decision reflects that it understood plaintiff to be making a categorical argument that can't possibly be right, which is the plaintiff said that his, quote, core point, this was in his reply brief in district court, docket 32 at page one. He said his core point was that, quote, as a matter of law, a CIA agent's cover-up is not an intelligence source or method. And the district court correctly rejected that proposition that there is no possible way that a reference to a cover-up would include a reference that necessarily reveals a source or method. The declassification order declassifies statements of CIA personnel regarding what they did and observed during the capture and questioning of al-Jumaidi. So those statements to be nonetheless withheld, it's your position that any such statements that may be in the report, disclosure of them would reveal intelligence sources or method? Yes, I think I followed the question correctly. I think anything that's marked in the report as B1 or B3 National Security Act, the agency determined as its declarant explained that that does reveal, that it either reveals an intelligence source or method would tend to reveal it in a way such that it's not possible to segregate it without someone figuring out what the, getting enough information to piece together some intelligence source or method. As far as what those specific interviews are about, I think the more granular information that's been officially acknowledged is the investigation reports at pages 167 to 170 of the JA. And those are the materials that, as we explained, were taken into account in the final version that the agency classified nature of the information in dispute. But I don't know if you have a way of explaining in general why something that does not appear or that might not appear to implicate intelligence sources or methods would nonetheless. I mean, the briefing doesn't really do that. The bond index doesn't really do that. Declaration doesn't really do that. So I would point the court to a few statements, I think, in this court's cases that explain what is going on there. One is what we were talking about before the point from Connell, that it's not just something that if a court looks at it, it may not be obvious what the value is to a foreign adversary looking at it, but they can sort of piece together what look like innocuous pieces of information to a third party observer, but to an expert and to someone like the declarant in this case, they looked at it and said, no, that's not something that we can let out. And then a related point, I think, is that plaintiff has said that this court's cases referring to deference to the executive branch's determinations only apply to its judgments about sort of specific prospective harm that could be caused. But I think that's clearly irreconcilable with what this court said in Wolf v. CIA, which it again repeated in Purup v. CIA, that courts must give great deference to CIA assertions of harm to intelligence sources and methods. And so I think that, again, underscores that when the CIA reviews this document and determines there are all of these passages that would tend to provide information on sources and methods, that's something that, of course, we all need to take quite seriously. Anything more, Judge Rogers? I guess I'm concerned about how we read that in this context and understand it in this context where I'm familiar with this notion of taking what would appear to a lay person like me, innocent facts that someone could piece together and figure out something that falls within one of the exemptions. And other than the passages that appear in the redacted version of the report, as I understood the district court's approach here, it was to accept that lock, stock, and barrel, so that anything that wasn't unredacted falls within that category, even if I were to read the report and say, I have no idea how that could possibly come within an exemption. Have I misunderstood both your understanding of how the district court approached this as well as what you're arguing to this court? The way I understood the district court's decision was it recognized that the declaration of the senior CIA official accurately describes the information under the redactions cannot be disclosed in a way that reflects that person's expertise. And the district court independently exercised its discretion, which I think plainly was within its discretion to do under this court's cases, to undertake an in-camera review of the report to confirm that it recognized how it could see why the CIA would have made that judgment, and it didn't find a basis for disturbing that conclusion. So as you know, in these FOIA cases, this circuit, and certainly others, have remanded for a more specific declaration by the agency. And in the hypothetical we're dealing with here, where you're suggesting even though a particular sentence might appear not to come within Exemption 1, nevertheless, here's how, and they might pick out a sentence in the report, saying this sentence would nevertheless have these implications that could be used, or maybe no implications itself, but the statement in the sentence could be used. And I'm just wondering about even if every judge on the court does an in-camera review, do our general approach in terms of viewing the exemptions narrowly require that, so that there are a lot of general statements in the declaration here? And I'm not suggesting they're erroneous, but they're not too helpful in doing that, and neither was district court to me in saying, well, everything's sort of interrelated, and that's the end of it. So I think the district court in addressing this case had the discretion and made the decision, looking at this declaration, what is it to do when thinks the declaration seems like it's going to be adequate. In this case, it ended up concluding it was adequate, but I'd like some more information. In this case, rather than ask for a more detailed declaration addressing particular topics that may have been of concern to the district court, or potentially asking for a classified declaration, given the likelihood that any more detail would itself reveal the classified information, the district court opted to review the report in in-camera and reached the conclusion that the reductions, sorry, that the withholdings were justified. Of course, if this court reviewing that conclusion de novo were to disagree that the combination of the in-camera review and the declaration were sufficient here, I agree with what Your Honor said early on, that if that were the conclusion the court were to reach, the right be to remand the district court not to go through saying we can tell that exemption one doesn't apply to this passage but does apply to this passage. I think that's not a task that's appropriately before the Court of Appeals. Well, I heard you say de novo review, and I was wondering about that in a general sense, that this court standard of review, for example, of summary judgment is de novo. But nevertheless, to findings by the district court in support of, let's say it's grant or denial, this court owes deference to historical findings. And I haven't seen anything written in this context that way, that the cases seem to suggest it truly is de novo. It's almost as though the district court hadn't done anything. And, you know, some statutes are written that way so that when a matter comes before us, even though the district court has considered and issued an opinion, we treat the matter as though we were sitting in the district court and start all over again. And is that your understanding of what happens in the FOIA context? I believe that there are cases that say that this court's review of a district court decision that has reviewed the document in cameras is de novo and that it's applying the summary judgment standard. That's the problem. That's what I'm getting at. It says that and then it goes on with that second phrase. I mean, in this case, of course, I don't think it's necessary to resolve something that hasn't been sort of disputed by the parties of the court would like further briefing on what level of deference to the district judge might be out here. That's certainly something we could address. But I think there's underlying both the district court's judgment and this court's judgment is the deference that's owed to the CIA's determinations. And, of course, as in any other case, even on de novo review, I think due respect to the district court's considered conclusion is as always appropriate in this case where, you know, you have a judge who took the extra step of going through the report, explained that he had done that line by line and reached the conclusion that the withholdings were sound. All right. I think that there was Mr. Match had reserved a couple minutes for rebuttal. So three quick points. Judge Rogers addressing the question that you asked about the standard of review. I think that the way that this court has dealt with situations where the district court has reviewed the record in camera is to just do its own in camera review. That sort of gets rid of these questions about should we defer to any sort of pseudo factual findings after in camera review? I can give you four cases decided since 2020 where this court did that. One was Waterman versus IRS. I know we've done that, counsel. Yeah. I guess what I'm saying is I don't think there are any cases where the court hasn't. And you say de novo review as in summary judgment. That's why you don't need to belabor the point, though. Understood. So the second point is about official acknowledgement doctrine. So I mean, Mr. Soter is is correct that it's a fairly strict standard under this court's precedence. What we're saying they have they've officially acknowledged is the fact that they use the hood in the interrogation. And if the sentence said. We found that CIA officials did not destroy the hood. The only thing that I can imagine that would be an intelligence method in that sentence is the fact that the hood was used in the interrogation. That fact is officially acknowledged. And so the official acknowledgement doctrine would be implicated there. Now, if there's some other discussions about what happened with the hood, sort of where the hood came from, you know, what it was made of, that actually might be a detail that was disclosed that maybe they can continue to withhold. But if it's a conclusion about whether it was destroyed, I just don't know what source or method it could be other than the officially acknowledged one that the hood was used in the interrogation. And that takes me to the last point that I want to just briefly touch on, which is that we still don't have any explanation, even in a hypothetical case. I understand there's sensitive classified facts here, but we don't have any explanation at all of when a conclusion like evidence was destroyed could possibly ever implicate an intelligence source or method. Now, there's been questions about what should be done about this potentially on remand. You know, the court obviously has the discretion to remand the case for a more particularized showing in the declaration. That's not something that the district court really asked for. But I would just point out that the CIA had every opportunity to address this point. We raised this point very clearly in our district court opening brief. They said they had a year to review the report. They got like eight or ten extensions to do it. They got another extension for the sole purpose of providing a supplemental declaration, and then they just gave it. So this delay is really quite prejudicial. And, you know, I think it would also be fully within the court's discretion to just reverse on this point. They have not provided the required explanation despite having had every opportunity to do so. In this court's decision a couple weeks ago in Human Rights Defense Council, that's kind of what this court did. It said the agency hasn't explained what it, you know, could have done under Exemption 6 that it couldn't have done the first time, and it just reversed on that issue even though the government asked for a remand. So in this case... You actually can't order anything disclosed because no one's briefed the scope of the CIA. That's true. So I think what you would do in that situation is to say, you know, the CIA has not met its burden on the National Security Act or Exemption 1. And so that issue is resolved in plaintiff's favor, and the parties can go back to the district court and brief whether the passages that you identify as improperly withheld under Exemption 1 and the National Security Act are covered by the CIA Act. That would be the issue that would remain on remand. You're right. I mean, you can't order it released. Thank you very much. Thank you. I will leave you now. All right. We're going to take a brief recess, and the court is going to have a closed session. Would you like us to stay around in case you have any other questions? I'm happy to do that. It's up to you. Okay. I'll stick around in case the court has questions coming in.
judges: Pillard; Garcia; Rogers